IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LEANNA JEAN PRUITT,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

        Defendant.

No. 3:10-cv-01303-HZ

OPINION & ORDER

TIM WILBORN
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, Oregon 97045

    Attorney for Plaintiff

///
///
///
///
///
///

1 - OPINION & ORDER

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

JEFFREY R. MCCLAIN
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900
Seattle, Washington 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Leanna Jean Pruitt ("Pruitt") brings this action for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") and Widow's Insurance Benefits payments under Title II of the Social Security Act ("the Act"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, I AFFIRM the Commissioner's decision.

## BACKGROUND

Born in 1946, Ms. Pruitt applied for benefits on December 15, 2005, alleging disability since January 4, 2005. Tr. 94. She alleges disability due to degenerative disc disease, chronic obstructive pulmonary disease, irritable bowel syndrome, psoriasis, obesity, hyperlipidemia, coronary artery disease, and depression. Tr. 119. The Commissioner denied her applications initially and upon reconsideration (Tr. 58-73), and an Administrative Law Judge ("ALJ") held a hearing on August 7, 2008. Tr. 25-45. The ALJ found Ms. Pruitt not disabled on September 30, 2008 (Tr. 18-24), and

the Appeals Council denied review of the matter on August 19, 2010.  Tr. 1-3.

## SEQUENTIAL DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Each step is potentially dispositive.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If she is, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement.  If the claimant does not have such a severe impairment, she is not disabled.  20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations.  If the impairment is determined to equal a listed impairment, the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments.  20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four.  If the claimant can perform her past relevant work, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ finds that the claimant's RFC precludes performance of her past

relevant work the ALJ proceeds to step five.

At step five the Commissioner determines if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); <u>Yuckert</u>, 482 U.S. at 142; <u>Tackett</u>, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. <u>Yuckert</u>, 482 U.S. 137, 146 n5; <u>Tackett</u>, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." <u>Tackett</u>, 180 F.3d. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1520(g); <u>Tackett</u>, 180 F.3d at 1099.

## THE ALJ'S DECISION

The ALJ found Ms. Pruitt's degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disorder, obesity, and "old compression fracture of T12" "severe" under the Commissioner's regulations. Tr. 21. The ALJ found that these impairments did not meet or equal a listed disorder, and found that Ms. Pruitt retained the RFC to

> [P]erform sedentary work . . . except she is limited to occasional reaching, pushing and pulling. She can frequently handle. She can occasionally operate foot controls. She can occasionally climb stairs and ramps and occasionally balance. She cannot climb ladders, ropes or scaffolds, stoop, kneel, crouch or crawl. She cannot work at heights or around unprotected moving machinery. She can occasionally drive and work around respiratory irritants, extreme temperatures, and vibrations. She cannot walk a block at a reasonable pace on rough or uneven surfaces. <u>Id.</u>

The ALJ subsequently found that Ms. Pruitt could perform her past relevant work as a telemarketer and receptionist at step four in the sequential proceedings (Tr. 23), and consequently found Ms.

Pruitt not disabled. Tr. 24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray, 554 F.3d at 1222 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006)), see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 US 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Ms. Pruitt asserts that the ALJ erroneously evaluated (1) her credibility; (2) the lay witness testimony; (3) the opinions of a treating physician and a reviewing physician; (4) her mental impairments at step two in the sequential proceedings; (5) her physical impairments at step three in

5 - OPINION & ORDER

the sequential proceedings; and (6) her ability to perform past relevant work at step four. Ms. Pruitt concludes that the ALJ should have found her disabled.

I.  Credibility

The ALJ rejected Ms. Pruitt's symptom testimony because Ms. Pruitt did not stop working due to her impairments, and because her statements were not consistent with the medical treatment record. Tr. 22. Ms. Pruitt challenges both findings. Pl.'s Opening Br. 17.

A.  Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not

substantiated affirmatively by objective medical evidence." Robbins, 466 F.3d at 883; see also Bunnell, 947 F.2d at 346-47.

### B.  Analysis

#### 1.  Work History

The ALJ noted that Ms. Pruitt stopped working as a caregiver because her client died, rather than because of her alleged disability. Tr. 22. Ms. Pruitt now asserts that the ALJ cited the opinion of examining physician Tatsuro Ogisu, M.D. in support of this finding. Pl.'s Opening Br. 17.

The ALJ stated, in full, "The claimant did not stop working in January 2005 due to her impairments, but rather because the individual she was taking care of died." Tr. 22. The ALJ did not include a citation with this statement, and subsequently discussed Dr. Ogisu's opinion.

The record shows that Ms. Pruitt reported in her disability applications that her client "died in Jan [sic] 2005 so I quit," (Tr. 109), and stopped working "because my client passed away. I did not stop because of my health at that time." Tr. 119. Though the ALJ should have included a citation to the record, the record clearly supports the ALJ's finding. The ALJ's credibility analysis may cite a claimant's decision to stop working for reasons other than disability, Bruton v. Massinari, 268 F.3d 824, 828 (9th Cir. 2001), and Ms. Pruitt therefore does not establish reversible error.

Ms. Pruitt subsequently attempts to characterize the ALJ's citation to her work record as "daily activities." Pl.'s Reply Br. 5. The ALJ made no identifiable finding regarding her daily activities, and the Commissioner does not assert that the ALJ relied upon such findings. Def.'s Br. 14-15. This argument is inapplicable and will not be addressed further.

#### 2.  Medical Record

The ALJ found the medical record inconsistent with Ms. Pruitt's subjective complaints. Tr.

22.

Ms. Pruitt first asserts that the ALJ in fact found she was malingering, and that such a finding is not based upon the record. Pl.'s Opening Br. 17. She specifically argues that, "contrary to the ALJ's assertion, Dr. Ogisu did not opine Plaintiff was malingering or exaggerating her pain complaints. Id. The ALJ made no malingering finding in his discussion of Dr. Ogisu's opinion, or in his remaining credibility analysis. Tr. 22-23. Ms. Pruitt's assertion of error is therefore unfounded.

Ms. Pruitt further asserts that the ALJ did not rely upon the proper legal standard in rejecting her testimony, arguing that the ALJ should have given "specific" reasons for rejecting her symptom testimony. Pl.'s Opening Br. 17-18. Ms. Pruitt misconstrues the relevant standard. As she correctly states, once a claimant establishes a medically-determinable impairment, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036. However, analysis under this standard may cite a claimant's medical record in conjunction with other credibility findings. Smolen, 80 F.3d at 1284; Robbins, 466 F.3d at 883; see also Bunnell, 947 F.2d at 346-47.

Crucially, Ms. Pruitt points to no specific error in the ALJ's analysis, nor does she explain the effect of such error. The ALJ discussed her medical record regarding her reported limitations in lifting, carrying, and walking. Tr. 22-23. The ALJ cited the opinions of examining physicians Dr. Ogisu and Steven Vander Waal, M.D. and the opinion and treatment notes of treating physician Harry Rinehart, M.D. Such citations are appropriate under the standards articulated above. Ms. Pruitt fails to establish reversible error, and the ALJ's citation to the medical record is affirmed.
///

### C. Credibility Conclusion

In summary, the ALJ's credibility findings are affirmed.

## II. Medical Source Statements

Ms. Pruitt argues that the ALJ improperly evaluated the opinions of treating physician Dr. Rinehart.

### A. Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. Id. If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. Id. at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

### B. Treating Physician Harry Rinehart, M.D.

Ms. Pruitt argues that the ALJ improperly rejected the exertional limitations described by Dr. Rinehart. Pl.'s Opening Br. 14-16. She specifically challenges the ALJ's rejection of Dr. Rinehart's statement that she could not lift up to ten pounds. Id. at 15-16.

The ALJ found that Ms. Pruitt could perform sedentary work. Tr. 21. This work entails lifting no more than ten pounds. 20 C.F.R. § 404.1567(a).

Dr. Rinehart treated Ms. Pruitt between August 13, 2004, and July 11, 2008. Tr. 227, 295. During this time he assessed nicotine dependence, chronic obstructive pulmonary disorder, high

lipids, obesity, degenerative disc disease, osteoporosis at T12, spondylosis of the lumbar spine, angina, and eczema. Tr. 214, 216, 217-27, 233, 258-60, 267-71. On four occasions he noted Ms. Pruitt's reports of depression and anxiety (Tr. 217, 223, 268, 297), which he characterized as "improved" on October 14, 2005 (Tr. 217), and noted as "stabilized" without medication on June 5, 2006. Tr. 268.

Dr. Rinehart wrote a note stating that he believed Ms. Pruitt was "disabled" on December 5, 2005 (Tr. 211), and on October 1, 2007, Dr. Rinehart completed a medical source statement. Tr. 281-84. Here he stated that Ms. Pruitt could never lift or carry weights up to ten pounds (Tr. 281), and could sit one hour, stand ten minutes, or walk fifteen minutes without interruption. Tr. 282. During the course of an eight-hour workday she could sit eight hours, stand four hours, and walk two hours. Tr. 282. Dr. Rinehart clearly indicated that Ms. Pruitt did not need a cane to ambulate, but wrote that she uses a cane "½ the time for safety" because she has had "falls and near falls" at home. Id. Dr. Rinehart indicated that Ms. Pruitt could occasionally reach, push, pull, and operate foot controls, and frequently handle objects, and continuously finger, and feel objects. Tr. 283. He also wrote that she is "able to crochet and knit." Id. She can occasionally climb stairs and balance, and never stoop, kneel, crouch, or crawl. Tr. 284. Finally Dr. Rinehart indicated that Ms. Pruitt can perform activities such as shopping, can travel independently, use public transportation, climb steps, prepare meals, attend to personal hygiene, and "sort, handle, use paper/files." Tr. 286. She can only walk a block before becoming short of breath. Tr. 286.

The ALJ discussed Dr. Rinehart's treatment notes, and cited Dr. Rinehart's October 1, 2007, exertional limitations. Tr. 22-23. The ALJ gave the opinion "some weight," but concluded that Dr. Rinehart's lifting restriction is "not supported by the treatment record." Tr. 23. Here the ALJ

10 - OPINION & ORDER

specifically noted that Ms. Pruitt reported to examining physician Dr. Vander Waal that she could lift ten pounds. Id.

Dr. Rinehart indicated that Ms. Pruitt could "never" lift or carry up to ten pounds, and wrote that this limitation was due to Ms. Pruitt's back impairments. Tr. 281.  However, Dr. Rinehart also stated that Ms. Pruitt could perform activities such as shopping and preparing simple meals (Tr. 286), and could drive. Tr. 283.  Further, as the ALJ noted, Ms. Pruitt reported to Dr. Vander Waal that she could lift up to ten pounds. Tr. 241.  Finally, Ms. Pruitt testified that she could lift up to five pounds. Tr. 39.  This evidence contradicts Dr. Rinehart's restriction against all lifting.  The ALJ may reject a treating physician's opinion that is unsupported by clinical notes, Bayliss, 427 F.3d at 1216, or contradicted by other substantial evidence of record.  Lester, 81 F.3d at 830.  The ALJ's interpretation of the evidence here conforms to these legal standards.  Ms. Pruitt therefore fails to show that the ALJ improperly rejected Dr. Rinehart's lifting restriction.

In summary, Ms. Pruitt fails to show reversible error in the ALJ's analysis of Dr. Rinehart's opinion.  The ALJ's findings are therefore affirmed.

### III.    Lay Testimony

Ms. Pruitt also asserts that the ALJ erroneously evaluated lay testimony submitted by her pastor, Richard Krane.  Pl.'s Opening Br. 19.

#### A.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ

11 - OPINION & ORDER

may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. Bruce, 557 F.3d at 1115; Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

### B.    Analysis

Mr. Krane completed a third-party report on February 15, 2006. Tr. 154-161. He indicated that he has known Ms. Pruitt for one year, and sees her two to three times per week. Tr. 154. Mr. Krane wrote that Ms. Pruitt cares for her dog, prepares frozen dinners and sandwiches, performs housekeeping with "encouragement because she tires out easily," and goes outside daily. Tr. 155-56. Her hobbies include watching television, crocheting, scrapbooking, and genealogy, and she regularly attends church and bible study groups. Tr. 158. Mr. Krane endorsed no exertional limitations other than lifting. Tr. 159. Regarding Ms. Pruitt's lifting restriction, Mr. Krane wrote, "don't know how many pounds, but she speaks of severe back pain." *Id.*

The ALJ did not discuss Mr. Krane's report. Ms. Pruitt now asserts that the ALJ's rejection of this testimony was erroneous because it establishes disability. Pl.'s Opening Br. 19. Ms. Pruitt gives no explanation for the manner in which Mr. Krane's testimony supports this conclusion. Id.

An ALJ's silent rejection of lay testimony is harmless only when the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Barnhart, 454 F.3d 1050, 1056 (9th Cir. 2005). Here, Mr. Krane did not express limitations that exceeded those articulated by the ALJ in Ms. Pruitt's RFC assessment. While Mr. Krane indicated that Ms. Pruitt is limited in "lifting," he clearly wrote that he did not know the extent of this limitation. Tr. 159. The ALJ found Ms. Pruitt limited to lifting associated with sedentary work (Tr. 21), which, as noted above, entails lifting no more than ten

pounds. 20 C.F.R. § 404.1567(a). Crediting Mr. Krane's testimony does not establish additional lifting limitations, or any other limitations excluded by the ALJ's RFC. Ms. Pruitt therefore fails to establish reversible error.

**IV.     Step Two Findings**

Ms. Pruitt asserts that the ALJ should have found her alleged mental impairments "severe" at step two in the sequential proceedings. Pl.'s Opening Br. 9.

    **A.     Step Two Standards**

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive. Id. At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1509; 404.1620(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. Id.

Step two findings must be based upon medical evidence. 20 C.F.R. § 404.1520(a)(ii). The Commissioner's regulations instruct that an impairment is "not severe" if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The step two inquiry is a "threshold inquiry," Yuckert, 482 U.S. at 153, but omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

    **B.     Analysis**

The ALJ found Ms. Pruitt's depression non-severe at step two. Tr. 21. The ALJ stated that Ms. Pruitt was diagnosed with "mild" depression, and received no treatment other than medications

13 - OPINION & ORDER

prescribed by her primary care physician. Id. He also noted that the medical record showed no limitations due to Ms. Pruitt's depression, and that Ms. Pruitt functions independently and performs part-time work as a caregiver. Id. The ALJ concluded that this evidence supported a finding of no more than "mild" limitations stemming from Ms. Pruitt's depression, and therefore found her depression non-severe. Id.

As noted, Dr. Rinehart cited Ms. Pruitt's reports of depression and anxiety on four occasions between October 2005 and July 2008. Tr. 217, 223, 268, 397. On June 5, 2006, he wrote that her depression was "stabilized" without medication (Tr. 268), but on July 7, 2008, stated that her symptoms continued. Tr. 297. Ms. Pruitt presently cites no work-related limitations stemming from her alleged mood impairments, Pl.'s Opening Br. 9-10, did not submit any such limitations in her application materials (Tr. 119, 171), and did not testify to such limitations at her hearing before the ALJ. Tr. 29-41. The ALJ's finding that Ms. Pruitt did not experience workplace limitations relating to her alleged mental impairments is therefore based upon the record.

Further, the ALJ discussed Ms. Pruitt's mental health treatment in his subsequent RFC analysis. Tr. 22-23. In such circumstances, any omission at step two is harmless. Lewis, 498 F.3d at 911. For all of these reasons, the ALJ's step two findings are affirmed.

**V.    Step Three Findings**

Ms. Pruitt also asserts that the ALJ should have found that her degenerative disc disease and chronic obstructive pulmonary disease ("COPD") together equaled listing 1.04C, which addresses "disorders of the spine." Pl.'s Opening Br. 11.

    **A.    Step Three Standards**

At step three, the ALJ must determine whether a claimant's medically determinable

14 - OPINION & ORDER

impairment "meets" or "equals" associated criteria in the Commissioner's regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii). This determination must be adequately explained. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

### B.     Analysis

Ms. Pruitt may not now raise an argument before this court not raised before the Appeals Council. Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999). Ms. Pruitt, who was represented by counsel, did not articulate a theory that her degenerative disc disease and COPD met or equaled any listing at her hearing before the ALJ. Tr. 27-45. Nor did she raise these arguments before the Appeals Council. Tr. 204-05. Ms. Pruitt therefore waived arguments pertaining to this theory, and her argument is now rejected for that reason.

## VI.    Step Four Findings

Finally, Ms. Pruitt alleges that the ALJ improperly relied upon the vocational expert's testimony in finding that she could perform her past relevant work at step four in the sequential proceedings. Pl.'s Opening Br. 19-20.

### A.     Step Four Standards

At step four, the ALJ determines whether a claimant can perform her past relevant work. 20 C.F.R. § 404.1520(a)(iv). If she can perform such work, she is not disabled. Id.

In determining the requirements of a particular position, the ALJ may refer to a claimant's past work as she actually performed it, 20 C.F.R. § 404.1565(b), or the ALJ may take administrative notice of generic job descriptions contained in the Dictionary of Occupational Titles ("DOT"). SSR 82-61, "Past Relevant Work – the Particular Job or the Occupation as Generally Performed," (available at 1982 WL 31387 at *1-2). The ALJ may choose between these alternative tests. Id. The

Commissioner's Administrative Ruling specifically acknowledges that "some individual jobs may require more or less exertion than the [DOT] description." Id. at *2.

The claimant is the primary source of information about her past relevant work. SSR 82-62, "A Disability Claimant's Capacity to Do Past Relevant Work, in General," (available at 1982 WL 31386 at *3). If the ALJ relies upon the DOT at step four, the ALJ must explain any discrepancies between the DOT data and the claimant's established limitations. Pinto v. Massinari, 249 F.3d 840, 847 (9th Cir. 2001) (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). A vocational expert's testimony may be useful, but is not required, at step four. Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).

### B.    Analysis

Ms. Pruitt argues that the ALJ's finding that she could perform her past work as a receptionist was inconsistent with the DOT, and also that the ALJ's questions to the vocational expert should have included additional limitations. Pl.'s Opening Br. 19-20.

#### 1.    Reaching Limitations

Ms. Pruitt clearly reported that her past work as a receptionist required reaching for "1/16" of the workday. Tr. 148. The ALJ restricted Ms. Pruitt to "occasional" reaching. Tr. 21. In sedentary work, an "occasional" restriction entails reaching no more than one-third of the time. DOT, App. C: "Components of the Definitional Trailer," (available at 1991 WL 688702). The ALJ's "occasional" reaching restriction is consistent with Ms. Pruitt's testimony describing her past relevant work. The ALJ need only find that a claimant can perform her past relevant work as she actually performed it, SSR 82-61 (available at 1982 WL 31387 at *1-2), and Ms. Pruitt therefore fails to establish error on this point.

### 2. Additional Limitations

The ALJ's questions to the vocational expert may exclude limitations properly rejected. Osenbrock v. Apfel, 240 F.3d. 1157, 1165 (9th Cir. 2001). As discussed above, Ms. Pruitt presently fails to show that the ALJ erroneously rejected additional limitations described in her testimony or that of Mr. Krane, or by Dr. Rinehart. Therefore, she does not establish that the ALJ omitted such limitations in his questions to the vocational expert.

In summary, the ALJ's step four findings that Ms. Pruitt could perform her past relevant work are affirmed.

## CONCLUSION

Ms. Pruitt fails to show that the ALJ improperly evaluated her testimony and that of the lay witness, and the medical evidence. She also fails to show that the ALJ made reversible step two, three and four findings. The ALJ's decision is based upon the record and the correct legal standards and is therefore AFFIRMED.

IT IS SO ORDERED.

Dated this __23rd__ day of March, 2012.

/s/ Marco A. Hernandez
Marco A. Hernandez
United States District Judge